RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 10/29/14
MB

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| EDWARD C. BROWN,<br>    Plaintiff | CIVIL ACTION<br>SECTION "P"<br>NO. 1:13-CV-03118 |
| VERSUS | |
| COUNSELOR WALSON, et al.,<br>    Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before this court is a complaint filed pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971),[1] by plaintiff Edward Brown ("Brown") on November 21, 2013 (Doc. 1) and supplemented on December 23, 2013 (Doc. 5). The named defendants are Unit Manager Huddleston[2] (a corrections officer employed at the United States Penitentiary in Pollock, Louisiana ("USP-Pollock")), Alfred Watson[3]

---

[1] Bivens defendants are federal officials brought into federal court for violating the Federal Constitution. Bivens-type actions may be brought only against federal agents and not federal agencies. F.D.I.C. v. Meyer, 510 U.S. 471, 486, 114 S.Ct. 996, 1006, 127 L.Ed.2d 308 (1994); Whitley v. Hunt, 158 F.3d 882 885 (5th Cir. 1998). Under Bivens, a plaintiff may recover damages for any injuries suffered as a result of federal agents' violations of his constitutional rights. Channer v. Hall, 112 F.3d 214, 216 (5th Cir. 1997).

[2] Huddleston was incorrectly named as "Huddleson" in Brown's complaint.

[3] Watson was incorrectly named as "Walson" in Brown's complaint.

(a counselor employed at USP-Pollock), Lauren Armour (a dental assistant employed at USP-Pollock), and Spencer Smith (the Public Health Services Officer assigned to USP-Pollock). Brown alleges that, while he was incarcerated in USP-Pollock in 2013, he was denied medical care and pain medication, and was denied a transfer to a medical center (Doc. 1). For relief, Brown asks for monetary damages (Doc. 1). Brown is presently confined in USP-Coleman I in Coleman, Florida.

Defendants answered the complaint (Doc. 16) and filed a motion for summary judgment (Doc. 24), to which Brown has not filed a response. Defendants' motion for summary judgment (Doc. 24) is now before the court for disposition.

## Law and Analysis

### Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

2

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such

allegations are insufficient, therefore, to defeat a motion for summary judgment. <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

<u>Denial of Medical Care Claim</u>

Brown contends that, while he was incarcerated in USP-Pollock in 2012 and 2013, he was denied medical care for serious medical problems, i.e., temporomandibular joint syndrome ("TMJ") and severe degenerative joint disease in his shoulder.

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Supreme Court defined "deliberate indifference" as "subjective recklessness," or, in other words, a conscious disregard of a substantial risk of serious harm. <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S.Ct. 1970, 1980 (1994). Because an inadvertent failure to provide adequate medical treatment does not violate the Eighth Amendment, deliberate indifference does not include a complaint that a physician has been negligent in diagnosing or treating a medical condition. <u>Estelle</u>, 97 S.Ct. at 291. Disagreement with medical treatment also does not state a claim for Eighth Amendment indifference to medical needs. <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997).

A prison official violates the Eighth Amendment only when two

requirements are met. First, the deprivation must be, objectively, sufficiently serious and the prison official's act or omission must result in the denial of the minimum civilized measure of life's necessities. Second, a prison official must have a sufficiently culpable state of mind, i.e. deliberate indifference to a prisoner's constitutional rights, to be subjected to a § 1983 liability to that prisoner. <u>Farmer</u>, 511 U.S. 825, 114 S.Ct. at 1976. Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. <u>Norton v. Dimazana</u>, 122 F.3d 286, 291 (5th Cir. 1997), citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976).

A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. <u>Easter v. Powell</u>, 467 F.3d 459, 464 (5th Cir. 2006), citing <u>Domino v. Tex. Dep't of Criminal Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001). A prison official is also deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care. <u>Walker v. Butler</u>, 967 F.2d 176, 178 (5th Cir. 1992); <u>Thompkins v. Belt</u>, 828 F.2d 298, 303 (5th Cir. 1987).

Brown alleges in his complaint that, while he was incarcerated in USP-Pollock in 2012, he asked for protection on August 13, 2012

5

after being threatened by several inmates armed with knives and he was placed in the special housing unit ("SHU") (Doc. 1). Brown contends in his complaint that he is a chronic care inmate, but SHU Manager Huddleston and Counselor Watson refused to transfer him to a medical center and kept him in the SHU for eight months (Doc. 1). Brown contends that Physician's Assistant Mark Carbo and the Regional Medical Director both approved him for transfer to a medical center on about September 1, 2012 because he needed surgeries on his shoulders and jaw (Doc. 1). However, another officer told Brown that the SHU unit team had removed him from the computer for a transfer to a medical center (Doc. 1). Brown contends that Unit Manager Huddleston told him he was not going anywhere unless he agreed to return to the Compound (Doc. 1). Brown further contends he had chronic pain and Huddleston and Watson refused to give him medication (Doc. 1). Brown contends that both Unit Manager Huddleston and the dentist told him he would not receive medical treatment and medication while he was in the SHU and that Brown would have to return to the "compound" or wait twelve months in pain (Doc. 1). Brown contends he had suffered pain, weight loss, his jaw hurt, and he could not eat or chew food without pain (Doc. 1). Brown contends that USP-Pollock received a new warden in 2013, Brown told him he was being denied medical care, and the Warden told him he should file a BP-9 complaint (Doc. 1). Brown contends that, in April 2013, he was transferred to the

medical center for federal prisoners in Springfield, Missouri, where he is awaiting surgery and receiving pain medication (Doc. 1).

Defendants show, through an affidavit by Spencer Smith (Doc. 24, Ex.)), the Public Health Services Officer and Health Services Administrator for USP-Pollock, that Brown was evaluated by a Registered Nurse for complaints of shoulder pain on July 5, 2012; the Registered Nurse noted Brown was already taking Sulindac for his pain (Doc. 24, Ex. pp. 2/79, 16/79, 18/79). Smith states in his affidavit that Brown was again evaluated for left shoulder pain by a physician's assistant on July 19, 2012 (Doc. 24, Ex. pp. 22/79); a prednisone dose pack was prescribed and an x-ray was ordered (Doc. 24, Ex. pp. 2/79, 24/79). On July 24, 2012, Brown's prednisone prescription was renewed and Brown was evaluated by Dr. Edward Chorette, who assessed degenerative joint disease (Doc. 24, Ex. pp. 2/79, 28-29/79), which was confirmed by the July 27, 2012 x-rays (Doc. 24, Ex. pp. 2/79, 31/79). An ultrasound on August 3, 2012, at an orthopedic clinic, showed a small partial thickness tear to Brown's subscapularis tendon (Doc. 24, Ex. pp. 3/79, 34/79). Smith also states in his affidavit that Brown complained of shoulder pain on August 6, 2012 and was advised to use ibuprofen, apply warm compresses, and reduce heavy lifting (Doc. 24, Ex. pp. 3/79, 37/79). On August 20, 2012, a Nurse Practitioner requested a consultation with an orthopedic surgeon for Brown,

7

which was referred to the Regional Medical Director (Doc. 24, Ex. pp. 3/79, 38/79). On October 12, 2012, Dr. Joel Alexander, the Clinical Director, noted that the referral for surgery was being submitted for a possible transfer to a BOP medical center and the referral was completed (Doc. 24, Ex. pp. 3/79, 40-43/79). On October 31, 2012, it was noted that Brown had been designated for transfer to the Federal Medical Center in Springfield, Missouri for surgical repair (Doc. 24, Ex. pp. 3/79, 46/79). Smith shows in his affidavit that, on December 18, 2012, Brown submitted a sick call request asking why he had been "denied surgery" after he had been approved, and Brown was told that he was still approved for surgery and awaiting his appointment (Doc. 24, Ex. pp. 4/79, 47/79). Smith shows that Dr. Alexander evaluated Brown in January 2013 for complaints that Sulindac was ineffective for his shoulder pain, and he prescribed Naproxen 500 twice a day for six months (Doc. 24, Ex. pp. 4/79, 51-53/79).

Smith also shows in his affidavit that Brown complained of jaw pain on January 8, 2013, was evaluated by the dental assistant, Laurent Armour, on January 23, 2013, and was evaluated by the dentist on February 6, 2012; the dentist found Brown has TMJ and requested a referral to an oral surgeon (Doc. 24, Ex. pp. 4/79, 50/79, 59-61/79). Brown was evaluated by Dr. Robert Levy, an oral surgeon, for TMJ on March 6, 2013, who found TMJ but did not think surgery was necessary and stated that Brown should use a night

guard (Doc. 24, Ex. pp. 4/79, 62/79, 65/79). On April 3, 2013, Dr. Strong, a dentist, built an Occlusal Mouth Guard for Brown to wear at night (Doc. 24, Ex. pp. 4-5/79, 67-72/79).

Defendants state in their brief that Brown was transferred to FMC-Springfield in April 2013. Smith's affidavit shows that, on April 18, 2013, a physician's assistant evaluated Brown during a health screening on his arrival to the Federal Medical Center in Springfield, Missouri, treated Brown for complaints concerning his left shoulder and nose, and ordered x-rays and a consultation with an orthopedist (Doc. 24, Ex. pp. 5/79, 74/79). Brown submitted an October 2013 medical record from FMC-Springfield showing he suffers from current, chronic, and recurring temporomandibular joint syndrome ("TMJ") and arthralgia, with pain, crepitus, and limited mandibular opening (Doc. 5, p. 2/5). Brown was prescribed a soft diet (which he refused) and a night guard (Doc. 5, p. 2/5). Brown submitted a July 2013 medical records which show he has severe degenerative joint disease ("DJD") in his shoulders and underwent a left shoulder replacement in July 2013 in the Federal Medical Center in Springfield, Missouri (Doc. 1, pp. 2-4/10).

Defendants also submitted affidavits from Danny Huddleston and Alfred Watson (Doc. 24), in which they each stated they had never withheld medical care from Brown and they had not told Brown he would not receive medical care while he was in the SHU.

It is clear that Brown received consistent and frequent

medical treatment for his shoulder and jaw complaints while he was in the SHU in USP-Pollock.

Brown's claim that he was denied medical care for his serious medical needs is clearly unsupported by the medical evidence.[4] It appears that every one of Brown's medical complaints was addressed in a timely manner. Since there are no genuine issues of material fact which would preclude a summary judgment in this case, defendants' unopposed motion for summary judgment (Doc. 24) should be granted.

### Conclude

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' unopposed motion for summary judgment (Doc. 24) be GRANTED and that Brown's action be DENIED AND DISMISSED WITH PREJUDICE in its entirety.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another

---

[4] Defendants also contend that Smith, as the Public Health Services Officer assigned to USP-Pollock is absolutely immune from suit (See Doc. 24, Ex. p. 8/79). The Supreme Court, in Hui v. Castaneda, 130 S.Ct. 1845 (U.S. 2010), held that Section 233 grants Public Health Officers immunity from suit under Bivens and that a plaintiff's exclusive remedy is under the Federal Tort Claims Act. The Supreme Court also stated that substitution of the United States as a party defendant would be freely allowed in such cases. However, since this case may be disposed of on the merits, substitution is unnecessary.

party's objections within **fourteen (14) days** after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs etc.) may be filed.  Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged.  Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this ____ day of October 2014.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE